IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL MCDERMOTT AND CHRISTINA MCDERMOTT, | ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 4:21-cv-461 |
| vs. | ) ) | |
| ELANCO ANIMAL HEALTH, INC., | ) ) | |
| and | ) ) | |
| BAYER HEALTHCARE, LLC, | ) ) | |
| and | ) | **JURY TRIAL DEMANDED** |
| BAYER HEALTHCARE ANIMAL HEALTH, INC. | ) ) ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

COME NOW Plaintiffs Michael McDermott and Christina McDermott, and for their Complaint against all Defendants, state as follows:

## INTRODUCTION

1.     This class action challenges Defendants' scheme to knowingly market and sell toxic flea and tick collars to Plaintiffs and unwitting consumers in the State of Missouri. Among other things, and only recently revealed as a result of public records requests to the Environmental Protection Agency, Defendants concealed from Plaintiffs and the Class that the Seresto Flea & Tick Collars they purchased had been associated with the deaths and/or serious injuries of thousands of pets as well as injuries to humans.

2.     Indeed, recently released Environmental Protection Agency (EPA) records reflect that the Seresto Flea and Tick Collars have been linked to almost 1,700 pet deaths, over 75,000 incidents involving pet harm, and nearly 1,000 incidents involving human harm.

3.     Defendants concealed the significant risks these products presented to Missouri pet owners, and instead represented that the products were both safe and effective, and charged premium prices for their products on this basis. Defendants continue to tout the collars' safety and conceal their risks.

4.     This action is brought pursuant to Missouri's Merchandising Practices Act seeking money damages arising from damages to the Class, including but not limited to the purchase price paid by Plaintiffs and the Class for the Seresto Flea and Tick Collar products developed, manufactured, marketed and/or sold by Defendants.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. §1332, as modified by the Class Action Fairness Act of 2005 in 28 U.S.C. Sections 1332(d), 1453, and 1711–1715, because minimal diversity exists in that at least one member of the Class is a citizen of a different state than one of the Defendants, there are more than 100 members of the Class, and the aggregate amount in controversy on information and belief exceeds $5,000,000, exclusive of interest and costs.

6.     Venue properly lies in this District pursuant to 28 U.S.C. §1391(a), because the Plaintiffs reside here and all Defendants have transacted substantial business within this District within the meaning of 28 U.S.C. §1391(a), as defined in 28 U.S.C. §1391(c), and because a substantial part of the events giving rise to the claims alleged herein occurred in this District.

7.      Furthermore, this Court has personal jurisdiction over the Defendants in that Defendants marketed and sold their products which caused Plaintiffs' and the Class' injuries throughout the State of Missouri, including throughout this District. Plaintiffs, as well as other members of the Class, purchased Defendants' product from Defendants which caused injury to Plaintiffs and the Class in Missouri, and specifically in the Eastern Division of this District. The Defendants further committed tortious acts and acts in violation of Missouri statute in the State of Missouri, including violations of the Missouri Merchandising Practices Act as set forth herein. Therefore, Plaintiffs' claims arise as a result of Defendants' transaction of business and/or commission of tortious acts in the State of Missouri for purposes of Missouri's Long Arm Statute, Sec. 506.500 R.S.Mo. Moreover, Defendant Bayer Healthcare Animal Health, Inc.'s principal place of business is located in the State of Missouri.

## PARTIES

8.      Plaintiffs Michael McDermott and Christina McDermott are a married couple and are citizens and residents of Chesterfield, Missouri. Plaintiffs purchased at least two flea and tick collars under Defendants' Seresto brand.  Plaintiffs were not aware at the time of sale that use of Seresto Flea & Tick Collars (hereinafter "Seresto Collars") was associated with the deaths and/or serious injuries of thousands of pets, or of the other dangers presented by the Seresto Collars as set forth herein.

9.      Defendant Elanco Animal Health, Inc. ("Elanco") is an Indiana corporation with its principal place of business in the State of Indiana. Defendant Elanco Animal Health, Inc. represents itself as a "global animal health company" and from approximately August of 2020 to the present has manufactured, distributed, marketed, advertised and sold Seresto Collars in the stream of commerce, including throughout the State of Missouri.

10. Defendant Bayer Healthcare, LLC is a Delaware corporation with its principal place of business in the State of New York.

11. Defendant Bayer Healthcare Animal Health, Inc. is a Delaware corporation with its principal place of business in the State of Missouri.

12. On information and belief, Defendants Bayer Healthcare, LLC and Bayer Healthcare Animal Health, Inc. (the "Bayer Defendants") developed, manufactured, distributed, marketed, advertised and sold the Seresto Collars from approximately 2012 until approximately August of 2020, including throughout the State of Missouri.

## FACTUAL BACKGROUND

13. From approximately 2012 to the present, one or more of the above Defendants at various times manufactured, marketed and sold a line of flea and tick collar products for cats and dogs known as Seresto Flea & Tick Collars.

14. The Seresto Collars, originally developed and sold by the Bayer Defendants, and now sold by Elanco, work by releasing amounts of pesticides onto the animal for months at a time. The pesticides are supposed to kill fleas, ticks and other pests and Defendants have at all times represented that Seresto Collars are safe for use by cats and dogs.

15. The Bayer Defendants sold their animal health division which manufactured and distributed the Seresto Collars to Defendant Elanco, a former subsidiary of Eli Lilly and Co., for $7.6 billion in 2019. According to a statement on Bayer's website, that sale was finalized and closed in approximately August of 2020.

16. On information and belief, Elanco is a leading seller of pet collars, generating hundreds of millions of dollars a year in revenue from their sale. The Seresto Collars are particularly profitable. In its 2019 annual report, and before selling the Seresto Collar business to

Elanco, Bayer reported revenue of more than $300 million on Seresto Collars alone.[1]

17.     Defendants at all relevant times warranted, promised, represented, labeled, and/or advertised that the Seresto Collars are safe for use on cats and dogs, including through the prominent use of pictures of happy, healthy dogs and cats which appear on the front of the collars' packaging.

18.     However, Defendants' Seresto Collars have caused harm to tens of thousands of pets according to adverse event data reflected in government documents obtained through public records requests and discussed in public media reports.

19.     Since Seresto Collars were introduced in 2012, the EPA has received incident reports of at least 1,698 related pet deaths. Furthermore, use of the Seresto Collar has caused rashes, seizures, motor dysfunction, fatigue, diarrhea, vomiting, and excessive drooling in animals. Overall, through June 2020, the agency has received more than 75,000 incident reports related to the collars, including nearly 1,000 involving human harm.

20.     According to a report issued by the Midwest Center for Investigative Reporting on or about March 2, 2021, the number of incident reports and pet death reports relating to the Seresto Collars made to the EPA are significantly higher than competing flea collars which use other pesticides, such as tetrachlorvinphos.[2]

21.     These numbers are likely several magnitudes less than total incidents, because, according to Nathan Donley, an expert on U.S. pesticide regulation and scientist with the Center for Biological Diversity, "Most of the time, people are not going to make the connection or they're

---

[1] https://www.annualreports.com/HostedData/AnnualReports/PDF/OTC_BAYZF_2019.pdf
[2] https://investigatemidwest.org/2021/03/02/popular-flea-collar-linked-to-almost1700-pet-deaths-the-epa-has-issued-no-warning/

not going to take an hour or so out of the day and figure out how to call and spend time on hold." *Id.*

22.     According to a statement obtained by USA Today, Karen McCormack, a retired EPA employee who worked as both a scientist and communications officer, stated that the agency has known about these incidents for years but has not informed the public of the potential risks associated with this product. McCormack said the collars have the most incidents of any pesticide pet product she has ever seen.[3]

23.     And as also reported by USA Today, Amazon, where Seresto is the top-selling collar, has received numerous complaints about the product from customers who detailed significant issues, including reports of neurological issues in their pets.

24.     Both the Seresto Collars' packaging as well as the product insert accompanying the products purchased by Plaintiffs and the Class failed to properly or sufficiently warn of the risk of death or serious injury to pets from use of the Seresto Collars, or that thousands of pet deaths have been reported as adverse events associated with use of the Seresto Collars.

25.     While the outside of the Seresto Collars' packaging indicates that the product is intended to kill fleas and ticks, it contains no warning whatsoever of any risk of death or serious injury to pets as a result of use.

26.     Seresto flea collars did not contain any warning that the product posed a risk of serious and systemic issues in pets such as neurological problems, seizures, gastrointestinal problems, and cancers in pets; as well as seizures, skin conditions, and neurological conditions in humans.

---

[3] https://www.usatoday.com/story/news/investigations/2021/03/02/seresto-dog-cat-collars-found-harm-pets-humans-epa-records-show/4574753001/

27.     While the insert which accompanies the Seresto Collars discusses "mechanical" irritation from wearing the collar and a purportedly "rare" or "very rare" risk of "application site reactions," neither the outside packaging nor the insert discloses the material fact that thousands of pet deaths and tens of thousands of other adverse events have been reported to the Environmental Protection Agency associated with the use of Seresto Collars, a material fact which was well known to Defendants.

28.     The Seresto Collars are made up of a plastic band impregnated with insecticides that are released over time to coat the animal's fur. They contain as active ingredients the neonicotinoid insecticide imidacloprid (10%) and the pyrethroid insecticide flumethrin (4.5%).

29.     Defendants represent that Seresto Collars contain imidacloprid to control flea infestations and flumethrin to repel and kill ticks. These active ingredients are slowly and continuously released from the pet's collar and cover the pet's entire coat. Seresto Collars are marketed for and intended to be worn continuously by pets for eight months, at which time the owner is expected to buy a new Seresto Collar.

30.     According to a Petition to Cancel Registration submitted to the Environmental Protection Agency by non-profit public advocacy group the Center for Biological Diversity on or about April 8, 2021,[4] imidacloprid has known toxic effects to not just insects, but to many other types of animals as well including birds and mammals (the class of animals to which cats and dogs belong).

31.     In early human health risk assessments of imidacloprid, EPA scientists noted a number of toxic effects in oral studies of rats and mice (surrogates for humans) from dietary

---

[4] https://www.biologicaldiversity.org/campaigns/pesticides_reduction/pdfs/2021-4-8-Petition-to-Cancel_SerestoCollarwExhs.pdf

exposure to imidacloprid. These effects included decreased movement and body weights, tremors, thyroid effects, retinal atrophy, and brain effects.

32.     Further demonstrating the risk of the use of imidacloprid as an active ingredient in Seresto Collars, in a 2017 risk assessment the EPA noted that dogs were *more* sensitive to imidacloprid than the standard test animals (e.g., rats and mice), even at doses seven times lower than the level of toxicity for mice and rats. The neurotoxic effects consisted of severe tremors and trembling at mid- to high-doses.

33.     Imidacloprid also presents danger to humans. It is one of the most common neonicotinoid pesticides used in household products, including flea and tick treatments such as Seresto Collars. According to the Center for Biological Diversity's Petition to Cancel Registration filed with the EPA, public records obtained from EPA by the Natural Resources Defense Council (NRDC), over the past decade reflect at least 1,630 recorded imidacloprid poisoning incidents in humans that are attributable to imidacloprid. Reported symptoms include skin rash, muscle tremor, difficulty breathing, vomiting, wheezing, lock jaw, memory loss, and renal failure.

34.     Furthermore, a study performed by National Institute of Health-funded researchers from University of North Carolina at Chapel Hill and University of California, Davis, referenced in the Center for Biological Diversity's Petition to the Environmental Protection Agency, associated frequent exposure to imidacloprid applied as flea and tick treatments for pets during pregnancy with a 2-fold elevated risk of autism spectrum disorder in prenatally-exposed children.

35.     The other active ingredient found in Seresto Collars, at 4.5%, is flumethrin. Flumethrin is a pyrethroid insecticide, which is in a class of pesticides that—like neonicotinoids—targets the peripheral and central nervous systems.

36. According to the Center for Biological Diversity's Petition to the EPA, the EPA's 2012 human health risk assessment of flumethrin for use in cat and dog collars indicates that it has toxic effects similar to many other pyrethroids. These effects include pawing, burrowing, writhing, salivation, coarse tremors, decreased body weights, and impaired motor activity. Furthermore, industry-funded studies used in a 2018 risk assessment for flumethrin involved toxicity studies which were conducted on rats and mice rather than dogs or cats (the animals that the manufacturer of flumethrin was seeking approval for its use on), making it difficult to determine the actual toxic effects of flumethrin on dogs and cats.

37. Since imidacloprid and flumethrin do not exist in isolation in the Seresto Collar, their synergistic effects must also be taken into consideration, i.e. the ways in which the individual ingredients can interact in the mixture in a way that enhances their toxic effects. These synergies, which are generally not assessed by EPA when it approves a pesticide product and specifically were not assessed in its approval of Seresto Collars, can turn what would normally be considered a safe level of exposure to people or animals into one that causes considerable harm. According to the Center for Biological Diversity's Petition to the EPA, even published studies by Bayer, the original manufacturer of the Seresto Collar, have shown that the combination of imidacloprid and flumethrin produces synergistic action in dogs and cats that may make these two chemicals more powerful and more toxic together than each individual pesticide alone.

38. While the product label indicates that the collar is for external use only, and focuses only on the risk of external reactions, that direction does not account for the fact that dogs and cats frequently clean themselves (by, for example, licking their fur), and can thereby be expected to regularly ingest the Seresto Collar's pesticides.

39.     Despite Defendants' knowledge of these thousands of reported adverse events, the risk of death as well as other systemic health effects such as neurological problems, gastrointestinal issues and even cancer are not disclosed as a risk of product usage on the Seresto Collars' product insert, labels or packaging.

40.     As a result, when Plaintiffs purchased and used Seresto flea collars, they reasonably believed that Seresto flea collars did not pose a risk of severe harm to pets or humans.

41.     Rep. Raja Krishnamoorthi, chairman of the Subcommittee on Economic and Consumer Policy, sent a letter on March 17, 2021 to Elanco's CEO asking the company to conduct a voluntary recall and to issue a full refund for customers.  Rep. Raja Krishnamoorthi further stated "We believe that the actual number of deaths and injuries is much greater since the average consumer would not know to report pet harm to EPA, an agency seemingly unrelated to consumer pet products."

42.     Defendant Elanco has refused to conduct a voluntary recall or refund the purchase price to consumers for the Seresto Collars and continues to market and sell the product. Elanco continues to sell the Seresto Collars, despite recent widespread calls from both Congress and public advocacy groups for the voluntary recall of these products.

43.      As a result of Defendants' false and misleading representations and material omissions of fact, the Seresto Collars have been sold at premium prices compared to other similar products. The products generally cost in excess of $40 for a small collar and $60 for a large collar, excluding tax. These amounts are significantly higher than the amounts for which they would be sold absent Defendants' false and misleading representations and material omissions.

44.     Plaintiffs purchased their dog Louie, a healthy black lab, in 2013.

45.     Plaintiffs purchased a Large Dog Seresto Collar for Louie on or about February 11, 2020 from a Petco store located on Olive Boulevard in Creve Coeur, Missouri.

46.     In approximately September of 2020, Louie began having severe diarrhea. He subsequently also began to experience hot spots and hair loss around both of his eyes and his front left leg.

47.     Plaintiffs had no reason to believe that Defendants' Seresto Collars were the cause of Louie's problems and purchased a second Seresto Collar on or about November 24, 2020.

48.     As a result of Louie's ongoing health conditions Plaintiffs' veterinarian placed Louie on a number of medications, including steroids. Louie also had to begin receiving injections for allergies.

49.     However, these medications were ineffective at treating Louie's conditions, until Plaintiffs removed his Seresto Collar. After doing so Louie's condition improved. However, Plaintiffs are still incurring large veterinary bills to treat residual skin issues that remain even after the Seresto collar was removed.

50.     On information and belief, the first Seresto Collar purchased by Plaintiffs in February of 2020 was manufactured and distributed by the Bayer Defendants, while the second Seresto Collar purchased by Plaintiffs in November of 2020 was manufactured and distributed by Defendant Elanco.

51.     Plaintiffs and the Class were not aware at the time of sale of any risk of death or significant injury to pets associated with Seresto Collars, and in particular were not aware of thousands of reports of death as well as tens of thousands of reports of other adverse events including serious injuries to pets associated with Seresto Collar use.

52.     Plaintiffs and the Class would never have purchased the Seresto Collars had they been aware of these facts. In the alternative, Plaintiffs and the Class would never have paid a premium for a pet collar which presented these risks and dangers to their pets.

53.     As further evidence of this fact, after the numerous reports of deaths and other serious adverse events associated with Seresto Collar use became public in March and April of 2021, on information and belief pet stores and other retailers began placing the Seresto Collars on sale or otherwise marketing and selling the products at a significantly reduced price.

54.     Any applicable statute of limitations has been tolled by the deceptive conduct alleged herein. Through no fault or lack of due diligence, Plaintiffs and the Class were deceived regarding the risks of Seresto flea collars and could not reasonably discover those risks on their own.

55.     Defendants actively concealed the fact that Seresto flea collars posed serious safety risks to pets and consumers. Defendants had actual knowledge that Seresto flea collars were not safe. But in spite of this, Defendants fraudulently concealed this information from consumers like Plaintiffs and the Missouri class members herein.

56.     Defendants are estopped from relying on any statutes of limitation as a defense to this action because they were under a continuous duty to disclose to Plaintiffs and the Class the true character, quality, and nature of Seresto flea collars.

57.     Any applicable statute of limitations only accrued upon discovery that Seresto flea collars presented serious safety risks. These risks were not a matter of public knowledge, were not disclosed to Plaintiffs or the Class prior to purchase, and Plaintiffs and the Class could not have discovered these risks through reasonably diligent investigation.

**CLASS ACTION ALLEGATIONS**

58.     Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3), individually and as a class action on behalf of: All persons who purchased, and have not yet received a full refund for, Defendants' Seresto Collars in the State of Missouri for personal or household use and not for resale.

59.     Specifically excluded from the proposed Class are Defendants and their officers, directors, agents, trustees, parents, corporations, trusts, representatives, employees, principals, partners, joint ventures and entities controlled by Defendants; their heirs, successors, assigns or other persons or entities related to, or affiliated with, Defendants; and the Judge(s) assigned to this action; and any member of their immediate families.

60.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment, amended complaint or at class certification proceedings.

61.     **Numerosity**: Class Members are so numerous that joinder of all individual members is impracticable.  While the exact number and identities of the Class Members are unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs allege that the Class is comprised of thousands of individual members geographically disbursed throughout the State of Missouri.  The number of Class Members and their geographical disbursement renders joinder of all individual members impracticable if not impossible.

62.     **Existence and Predominance of Common Questions**:  There are questions of fact and law common to Plaintiffs and Class Members that predominate over any questions affecting solely individual members including, *inter alia*, the following:

a.      whether Defendants manufactured, marketed, distributed, and/or sold the Seresto Collars while omitting material information regarding significant risks of death or serious injury associated with use of Seresto Collars on dogs and cats;

b.      whether Defendants manufactured, marketed, distributed, and/or sold the Seresto Collars while omitting material information regarding reported adverse events involving death or serious injury associated with use of Seresto Collars on dogs and cats;

c.      whether Defendants falsely advertised, represented, or held out the Seresto Collars as a product that was efficacious for the advertised use while being safe for use by dogs and cats;

d.      whether Defendants intended or foresaw that Plaintiffs, Class Members, or others would rely on Defendants' false representations and material omissions of facts regarding the safety of the Seresto Collars;

e.      whether Defendants acted knowingly or with reckless disregard in manufacturing, processing, distributing, and/or selling the Seresto Collars;

f.      whether Defendants were negligent in manufacturing and/or processing the Seresto Collars;

g.      whether Defendants' advertisements and/or labels on the Seresto Collars were false, misleading or reasonably likely to deceive, or contained material omissions of fact;

h.      whether Defendants violated the Missouri Merchandising Practices Act, Mo. Rev. Stat. §407.010, *et seq.*;

14

i.      whether Defendants breached any implied warranty of merchantability to Plaintiffs and other Class Members;

j.      what is the measure and amount of damages suffered by Plaintiffs and Class Members;

k.      whether Plaintiffs and Class Members are entitled to injunctive or declaratory relief;

l.      whether Defendants' actions proximately caused damages to Plaintiffs and Class Members;

m.      whether Defendants have been unjustly enriched; and

n.      whether Defendants are liable for punitive or exemplary damages.

63.     **Typicality**: Plaintiffs' claims are typical of the claims of other Class Members in that all such claims arise out of Defendants' violations of the Missouri Merchandising Practices Act and the other legal claims set forth herein and Defendants' misconduct in manufacturing, producing, advertising and entering into the stream of commerce the Seresto Collars, as well as Defendants' conduct surrounding communications with the public and federal and state regulators, veterinarians and others regarding the Seresto Collars. Plaintiffs and the Class Members seek identical remedies under identical legal theories arising from their purchase and use of the Seresto Collars, and there is no antagonism or material factual variation between Plaintiffs' claims and those of other Class Members.

64.     **Adequacy**: Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' claims are coextensive with, and not antagonistic to, the claims of other Class Members. Plaintiffs are willing and able to vigorously prosecute this action on behalf of the Class, and

Plaintiffs have retained competent counsel experienced in litigation of this nature and who have successfully handled consumer fraud class litigation of this nature in the past.

65.     **Superiority**:  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class Members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants.  It would thus be virtually impossible for Class Members, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class Members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

66.     In the alternative, the Class may also be certified under Federal Rule of Civil Procedure 23(b)(2) because:

> a.     the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members that would establish incompatible standards of conduct for the Defendants;
>
> b.     the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class Members not parties to the

adjudications, or substantially impair or impede their ability to protect their interests; and/or

c.      Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

67.     Adequate notice can be given to Class Members and directly using information maintained in party retailers' records or through notice by publication.

68.     Damages may be calculated from the data maintained in Defendants' records, so that the cost of administering a recovery for the Class can be minimized.  However, the precise amount of damages available to Plaintiffs and Class Members is not a barrier to class certification.

## COUNT I

### VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT
### MISSOURI REVISED STATUTES §407.010, *ET SEQ*.

69.     Plaintiffs incorporate each of the above allegations of this Complaint by reference as if fully set forth herein.

70.     This Count is brought pursuant to the Missouri Merchandising Practices Act, Mo. Rev. Stat. §407.020, *et seq*. on behalf of a Missouri class of purchasers of Defendants' Seresto Collars for use on their cats and/or dogs.

71.     At all relevant times, Plaintiffs and other Class Members were purchasers within the meaning of Mo. Rev. Stat. §407.025.1.

72.     Plaintiffs purchased Defendants' products for their own use as consumers, and not for resale.

17

73.     At the time Plaintiffs purchased Defendants' products, they were unaware that thousands of pet deaths have been reported to the EPA as adverse events in connection with the Seresto Collars and that tens of thousands of additional adverse events have been reported.

74.     At all relevant times, Defendants conducted trade and commerce in the State of Missouri within the meaning of Mo. Rev. Stat. §407.010(7).

75.     At all relevant times, Plaintiffs, other Class Members, and Defendants were persons within the meaning of Mo. Rev. Stat. §407.010(5).

76.     The Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.020.1, *et seq.*, provides in pertinent part that:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri, is declared to be an unlawful practice. . . . Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

77.     Defendants violated the Missouri Merchandising Practices Act by misrepresenting, omitting, concealing, and failing to disclose material facts on the labels and packaging of Seresto Collars, including that said collars were inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; contained unsafe levels of imidacloprid and flumethrin; came with a risk of death to pets and/or serious systemic health problems, as described above.

78.     Furthermore, Defendants, individually and/or jointly, by and through their employees, agents, apparent agents, liaisons, and/or sales representatives, engaged in concealment, suppressions, and/or omissions, misrepresentations, unlawful schemes and courses of conduct

intended to induce Plaintiff and Class Members to purchase the Seresto Collars through one or more of the following unfair and/or deceptive acts and/or practices:

      a.    Omitting, suppressing, and/or concealing the material fact that thousands of pet deaths and tens of thousands of other pet injuries have been reported in connection with use of Seresto Collars;

      b.    Omitting, suppressing, and/or concealing the material fact that Seresto Collars are known to present a risk of death and/or significant injury to pets, as set forth in this Complaint;

      c.    Omitting suppressing, and/or concealing the material fact that Seresto Collars present a risk of neurological and other systemic health effects, and not just "site reactions" on pets' skin;

      d.    Affirmatively misrepresenting or suggesting to purchasers, including through packaging, through advertising, and other means, that the Seresto Collars were safe for use on cats and dogs; and

      e.    Failing to alert the public and purchasers regarding the dangers arising from use of Seresto Collars.

79.    Defendants' unfair and/or deceptive acts and/or practices violated the Missouri Merchandising Practices Act, Mo. Rev. Stat. §407.020.

80.    The facts which Defendants misrepresented, omitted, suppressed, and/or concealed as alleged in the preceding paragraphs were material in that they concerned facts that would have been important to a reasonable consumer in deciding whether to purchase the Seresto Collars.

81.    It was foreseeable that Defendants' conduct in concealing these risks would cause a reasonable consumer to enter into the transaction at issue and the Plaintiffs and the Class acted

as reasonable consumers under the circumstances in purchasing the Seresto Collars, in that it is reasonable to pay a premium price for a flea and tick collar which is both effective and (as represented by Defendants) safe for pets and humans.

82.     Defendants' conduct as alleged in the preceding paragraphs was unfair in that it: (a) offended public policy; (b) it was immoral, unethical, oppressive, and/or unscrupulous; and/or (c) it caused substantial economic injury to consumers, namely Plaintiffs and Class Members.

83.     Defendants' unfair and/or deceptive acts and/or practices alleged in the preceding paragraphs occurred in connection with Defendants' conduct of trade and commerce in Missouri.

84.     Defendants' misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Seresto flea collars were disseminated to Plaintiffs in a uniform manner.

85.     Defendants intended for Plaintiffs and Class Members to purchase Defendants' Seresto Collars in reasonable reliance upon Defendants' unfair and/or deceptive acts and/or practices in the marketing, promotion, and sale of their products.

86.     As a direct and proximate result of Defendants' unfair and/or deceptive acts and/or practices, Plaintiffs and Class Members did not receive what they bargained for and believed they were receiving, flea and tick collars which were safe for use on the pets and did not come with a significant known risk of death or other serious injuries to pets.

87.     Defendants' unfair and/or deceptive acts and/or practices were outrageous due to Defendants' evil motive and/or reckless indifference to the rights of others; and committed with complete indifference to and conscious disregard for Plaintiffs' and the Class' rights, and Defendants acted with deliberate and flagrant disregard for the safety of Plaintiffs and the Class and their pets, entitling Plaintiffs and the Class to punitive damages.

88.     Plaintiffs and the Class therefore request actual damages in an amount to be proven at trial, punitive damages, reasonable attorneys' fees and their costs herein. Plaintiffs and the Class are also entitled to injunctive relief to remedy Defendants' unfair and/or deceptive acts and/or practices in violation of the Missouri Merchandising Practices Act.

## COUNT II

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

89.     Plaintiffs incorporate each of the above allegations of this Complaint by reference as if fully set forth herein.

90.     Defendants, through their agents, employees and/or subsidiaries, manufactured, marketed, sold, or distributed the Seresto Collars.  When Defendants placed the Seresto Collars into the stream of commerce, they knew, reasonably should have known, or were obligated to understand that Plaintiffs and the Class were purchasing the collars for their intended and ordinary purpose of helping their pets and not placing them in risk of death or serious injury.  Defendants impliedly warranted that the Seresto Collars were of merchantable quality and safe and fit for ordinary use.

91.     Plaintiffs reasonably relied upon the skill, superior knowledge and judgment of Defendants as to whether Seresto Collars were of merchantable quality and safe and fit for ordinary use as flea and tick collars.

92.     Due to Defendants' wrongful conduct as alleged herein, Plaintiffs could not have known about the risks and side effects associated with Seresto Collars.

93.     In breach of said implied warranty, Seresto Collars were not of merchantable quality and were not safe or fit for ordinary use.  Seresto Collars cannot perform their ordinary and represented purpose because, on information and belief, the product is toxic to cats and dogs and

presents a significant risk of death or serious injury to cats and dogs, and thus is not suitable for that purpose advertised by Defendants. The Seresto Collars are therefore not fit for the ordinary purposes for which such goods are used.

94.     Plaintiffs and other Class Members purchased the Seresto Collars and used it for the ordinary and intended purpose.  Plaintiffs and Class Members entered into agreements with Defendants or their agents and received uniform warranties in connection with the purchase of such Seresto Collars.

95.     As a direct and proximate result of Defendants' breach of implied warranty, Plaintiffs suffered damages as alleged herein.

**COUNT III**

**UNJUST ENRICHMENT**

96.     Plaintiffs incorporate the above allegations of this Complaint by reference as if fully set forth herein.

97.     As a direct, proximate, and foreseeable result of Defendants' acts and otherwise wrongful conduct, Plaintiffs and the Class suffered damages.  Defendants profited and benefited from the sale of the toxic Seresto Collars while the Seresto Collars caused Plaintiffs and Class Members to incur losses and damages.

98.     Defendants have voluntarily accepted and retained these profits and benefits, derived from consumers, including Plaintiffs and other Class Members, with full knowledge and awareness that, as a result of Defendants' unconscionable wrongdoing, consumers, including Plaintiffs and other Class Members, were not receiving products of the quality, nature, fitness, or value that had been represented by Defendants or that reasonable consumers expected.  Plaintiffs purchased Seresto Collars that they expected would be safe and healthy for their pets.

99.     By virtue of the conscious wrongdoing alleged in this Complaint, Defendants have been unjustly enriched at the expense of Plaintiffs and Class Members, who are entitled to, and hereby seek, the disgorgement and restitution of Defendants' wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court; and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

100.    Unless successful on the other counts of this Complaint, Plaintiffs have no adequate remedy at law.

## COUNT IV

## NEGLIGENT MISREPRESENTATION

101.    Plaintiffs incorporate the above allegations of this Complaint by reference as if fully set forth herein.

102.    Defendants, through their agents, employees and/or subsidiaries, negligently and recklessly misrepresented various material facts and/or made material omissions of fact regarding the quality and character of the Seresto Collars, as described above, under circumstances where Defendants either knew or reasonably should have known that the representations were not true. Defendants thereby failed to exercise reasonable care in providing information regarding the safety of the Seresto Collars.

103.    These misrepresentations and material omissions of fact were contained in various packaging, advertising and marketing materials from Defendants, and such misrepresentations were further reiterated and disseminated by the officers, agents, representatives, servants or employees of Defendants acting within the scope of their authority.

104.    The information withheld from Plaintiffs and the Class is material and would have been considered as such by a reasonable person, as detailed above.

105.    Plaintiffs and the Class justifiably relied on the information provided by Defendants.

106.    The information was provided for Plaintiffs and the Class in the guidance of a particular business transaction, i.e. the purchase of Seresto Flea and Tick Collars.

107.    Due to Plaintiffs and the Class' reliance on Defendants' representations, Plaintiffs and the Class were injured, in that they purchased the Seresto Collars under the false impression that the product was safe to use as flea and tick collars as advertised.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief and judgment against Defendants as follows:

A.      For an order certifying the Class under the appropriate provisions of Federal Rule of Civil Procedure 23, as well as any appropriate subclasses, and appointing Plaintiffs as Class Representatives and appointing their legal counsel to represent the Class as Class Counsel;

B.      Awarding actual, compensatory, and consequential damages;

C.      Awarding punitive damages as provided under relevant laws;

D.      Awarding injunctive relief as appropriate;

E.      Awarding declaratory relief;

F.      For pre- and post-judgment interest to the Class, at the highest rate allowed by law;

G.      Awarding costs, including experts' fees, and attorneys' fees and expenses, and the costs of prosecuting this action; and

H.      Granting such other and further relief as is just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues triable by a jury.

Respectfully submitted,

DOWD & DOWD, P.C.

By:    /s/ William T. Dowd
        WILLIAM T. DOWD (39648)
        ALEX R. LUMAGHI (56569)
        LIA DOWD (60999)
        211 North Broadway, Suite 4050
        St. Louis, Missouri   63102
        314-621-2500
        Fax: 314-621-2503
        bill@dowdlaw.net
        alex@dowdlaw.net
        lia@dowdlaw.net

*Attorneys for Plaintiffs*